# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| GRAMERCY DISTRESSED OPPORTUNITY FUND, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 4:24-cv-02981 |
| | : | |
| PDV HOLDING, INC., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| *and* | : | |
| | : | |
| PETRÓLEOS DE VENEZUELA, S.A. | : | |
| | : | |
| Intervenor-Defendant. | : | |

## DEFENDANT PDV HOLDING, INC.'S
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

Introduction and Statement of Issues ............................................................. 1

Nature and Stage of Proceedings ................................................................... 4

Legal Standard ............................................................................................... 7

Choice of Law ................................................................................................ 7

Argument ...................................................................................................... 11

    I.     Gramercy Has Failed to Allege Alter Ego Under Delaware Law. ....... 11

           A.     Gramercy Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil. ............................................. 12

           B.     Gramercy Has Not Alleged "Exclusive Domination and Control" .......... 15

           C.     Gramercy Has Not Adequately Alleged that Reverse Piercing Is Equitable. ............................................................................... 20

    II.     Even if *Bancec* Applied, Gramercy Fails to State a Claim. ................. 23

Conclusion ................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Adm'rs of Tulane Educ. Fund v. Ispen, S.A.*,
  450 Fed. App'x 326 (5th Cir. 2011) ................................................................... 17

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
  545 A.2d 1171 (Del. 1988) ............................................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................... 7, 14

*Att'y Gen. of U.S. v. Irish N. Aid Comm*,
  668 F.2d 159 (2d Cir. 1982) ............................................................................ 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................... 14

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*,
  402 U.S. 313 (1971)........................................................................................... 7

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
  447 F.3d 411 (5th Cir. 2006)....................................................................... 23, 24

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
  154 A.2d 684 (Del. 1959) ................................................................................. 12

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  596 U.S. 107 (2022)................................................................................ 9, 10, 11

*City of Milwaukee v. Illinois & Michigan*,
  451 U.S. 304 (1981)........................................................................................... 9

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
  No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ....................... 13

*Crosse v. BCBSD, Inc.*,
  836 A.2d 492 (Del. 2003) ................................................................................. 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ..................................................................... 4

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019).............................................................................. 4

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015)................................................................................ 25

*EMAK Worldwide, Inc. v. Kurz*,
  50 A.3d 429 (Del. 2012) ................................................................. 20

*Energy Coal, S.p.A. v. CITGO Petroleum Corp.*,
  No. 2:14CV03092, 2015 WL 5123867 (W.D. La. Aug. 31, 2015),
  *aff'd*, 836 F.3d 457 (5th Cir. 2016) ................................................ 11

*Enex Int'l, Inc. v. Prime 3 Grp., LLC*,
  No. 3:17-CV-00163, 2020 WL 6731019 (S.D. Tex. Oct. 27, 2020),
  *R&R adopted,* 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020) ................... 8

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
  703 F.3d 742 (5th Cir. 2012), *as revised* (Jan. 17, 2013) ............... 6, 24, 25

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ............................................................. passim

*Flatow v. Alavi Found.*,
  225 F.3d 653, 2000 WL 1012956 (4th Cir. 2000) ................................. 10

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ........................................................ 17

*G&A Strategic Investments I LLC v. Petróleos de Venezuela, S.A.*,
  No. 23-cv-10766, 2025 WL 588208 (S.D.N.Y. Feb. 21, 2025) .......... passim

*Gallagher v. McClure Bintliff*,
  740 S.W.2d 118 (Tex. Ct. App. 1987), *writ denied* (Mar. 2, 1988) ............. 8

*Hester Int'l Corp. v. Fed. Republic of Nigeria*,
  879 F.2d 170 (5th Cir. 1989) ....................................................... 20

*Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*,
  934 F. Supp. 570 (S.D.N.Y. 1996) ................................................. 21

*In re Aluotto*,
  No. 08–32970, 2009 WL 1231988 (Bankr. S.D. Tex. Apr. 29, 2009) ............. 8

*In re Autobacs Strauss, Inc.*,
   473 B.R. 525 (Bankr. D. Del. 2012) ............................................... 18

*In re Bass*,
  No. 09–11451, 2011 WL 722384 (Bankr. W.D. Tex. Feb. 11, 2011) ............. 8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig*,
  238 F. Supp. 3d 799 (S.D. Tex. 2017) ......................................... 13, 15

*In re Teleglobe Commc'ns Corp.*,
　　493 F.3d 345 (3d Cir. 2007) ................................................................ 17

*In re The Heritage Org., L.L.C.*,
　　413 B.R. 438 (Bankr. N.D. Tex. 2009) ................................................. 18

*In re Tropicana Ent., LLC*,
　　520 B.R. 455 (Bankr. D. Del. 2014) ..................................................... 17

*In re Xtreme Power Inc.*,
　　563 B.R. 614 (Bankr. W.D. Tex. 2016) ................................................. 5

*Johnston v. Dexel*,
　　373 F. Supp. 3d 764 (S.D. Tex. 2019) .................................................. 5

*Lormand v. US Unwired, Inc.*,
　　565 F.3d 228 (5th Cir. 2009) ................................................................ 7

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
　　251 A.3d 694 (Del. Ch. 2021) ........................................................ passim

*Marsh v. Rosenbloom*,
　　499 F.3d 165 (2d Cir. 2007) ................................................................ 11

*Matthews Constr. Co. v. Rosen*,
　　796 S.W.2d 692 (Tex. 1990) ................................................................. 8

*Meyers ex rel. Benzing v. Texas*,
　　410 F.3d 236 (5th Cir. 2005) ................................................................ 9

*Nieves v. Insight Bldg. Co., LLC*,
　　No. CV 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ..................................... 19

*O'Melveny & Myers v. F.D.I.C.*,
　　512 U.S. 79 (1994) ............................................................................. 10

*OI Eur. Grp. B.V. v. Bolivarian Rep. of Venezuela*,
　　73 F.4th 157 (3d Cir. 2023) ................................................................. 15

*Pac. Dev., Inc. v. United States*,
　　No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979) ............................. 18

*Port Drum Co. v. Umphrey*,
　　852 F.2d 148 (5th Cir. 1988) ................................................................ 9

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
　　863 A.2d 772 (Del. Ch. 2004) .............................................................. 17

*Quadrant Structured Prods. Co. v. Vertin,*
  102 A.3d 155, (Del. Ch. 2014) ................................................................. 14

*Rodriguez v. Fed. Deposit Ins. Corp.,*
  589 U.S. 132 (2020) ............................................................................... 10

*Sprint Nextel Corp. v. iPCS, Inc.,*
  No. 3746–VCP, 2008 WL 2737409 (Del. Ch. July 14, 2008) .................. 16

*Taylor v. Sturgell,*
  553 U.S. 880 (2008) ................................................................................. 7

*Trenwick Am. Litig. Tr. v. Billett,*
  931 A.2d 438 (Del. 2007) ........................................................................ 19

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.,*
  906 A.2d 168 (Del. Ch. 2006) ........................................................... 19, 25

*United States v. Bestfoods,*
  524 U.S. 51 (1998) .................................................................................. 13

*United States v. Charles,*
  469 F.3d 402 (5th Cir. 2006) .................................................................... 8

*Valley Fin., Inc. v. United States,*
  629 F.2d 162 (D.C. Cir. 1980) ................................................................. 18

*Walker Int'l Holdings, Ltd. v. Republic of Congo,*
  415 F.3d 413 (5th Cir. 2005) .................................................................... 8

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,*
  752 A.2d 1175 (Del. Ch. 1999) ................................................ 2, 11, 12, 20

**Statutes**

28 U.S.C. § 1603 ........................................................................................ 10

8 Del. C. § 211 ........................................................................................... 20

Tex. Civ. Prac. & Rem. Code § 35.008 ......................................................... 5

Tex. Civ. Prac. & Rem. Code Ann. § 37.004 ................................................. 5

**Rules**

Fed. R. Civ. P. 8 .......................................................................................... 7

Fed. R. Civ. P. 12 .................................................................................. 7, 13

Fed. R. Civ. P. 69.................................................................................................. 4, 8, 9

**Other Authorities**

1 James D. Cox & Thomas Lee Hazen,
   *Treatise on the Law of Corporations* § 7:9 (4th ed. 2024 update)........................... 18

1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Corps.,* Ch.2, § 41.33 ...................... 16

## Introduction and Statement of the Issues

Plaintiff Gramercy Distressed Opportunity Fund, LLC, a hedge fund speculation vehicle, seeks unprecedented relief and—even after three attempts—still fails to state a claim for it.

In 2023, Gramercy purchased two judgments entered against the Bolivarian Republic of Venezuela. Gramercy thereafter appeared in federal court in Delaware to pursue—and, in March 2024, obtain—a writ of attachment against the shares of Defendant PDV Holding, Inc. ("PDVH")—an American company that is wholly owned by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of the Republic. In those proceedings, the court is overseeing a forced sale of the shares of PDVH to satisfy over $21 billion in judgments against the Republic and/or PDVSA held by fifteen groups of creditors. Gramercy purchased the judgments two months *after* the Delaware court issued a priority order placing those judgments in fifteenth place, behind roughly $20 billion in judgments held by other creditors. Gramercy then moved for reconsideration of the priority order to allow it to participate in the sale proceeds *pro rata* with certain other judgment creditors, but the Delaware court denied that motion in February 2024.

In an obvious ploy to evade this result and jump to the head of the priority line, Gramercy filed this conceptually inconsistent action: its attachment of PDVH shares in Delaware depends on the fact that PDVH *is* a separate corporate entity, whereas its alter ego claim here alleges that PDVH *is not* a separate corporate entity. In a typical veil-piercing action, the plaintiff is a creditor of a corporation but seeks to pierce the corporate veil to reach the assets of the corporation's shareholder. Here, by contrast, Gramercy is a creditor of the corporation's shareholder (actually, the shareholder's shareholder) and seeks to reverse-pierce the corporate veil to reach the assets of the corporation. Gramercy's claims, however, fall far short of the three requirements for reverse veil-piercing under Delaware law, which governs here. The Second Amended Complaint ("SAC"),

1

Dkt. 69, must therefore be dismissed with prejudice.

*First*, the SAC does not and cannot allege any facts plausibly suggesting "fraud or similar injustice" in the use of corporate form—in particular, none plausibly suggesting that PDVH is merely a sham corporation used to deceive or defraud Gramercy or other creditors.[1] On the contrary, PDVH has existed for nearly three decades and is the indirect owner of a major U.S. refiner— CITGO Petroleum Corporation ("CITGO"). Gramercy also does not allege that PDVH is being used to hide the Republic's assets. Instead, it alleges that PDVH paid dividends that ultimately reached the Republic, that PDVH issued pledges in support of PDVSA's debt obligations, and that CITGO Holding raised capital in the U.S. debt markets. As a matter of law, these are the ordinary incidents of corporate ownership, not "fraud or similar injustice" in the use of the corporate form. If anything, they would have *enhanced* PDVSA and Venezuela's ability to satisfy their debts.

Indeed, in two actions brought by Gramercy affiliates asserting the same alter ego claims against PDVH, a federal court in New York (the "New York Court") rejected the contention that the transactions Gramercy identifies here amounted to "fraud or injustice" under federal common law even after plaintiffs sought leave to amend after extensive discovery. *G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, No. 23-cv-10766, 2025 WL 588208, at *7 (S.D.N.Y. Feb. 21, 2025) (consolidated with *Girard Street Inv. Holdings LLC v. PDV Holding, Inc.*, No. 24-cv-04448 (S.D.N.Y.)) (the "New York Actions") (dismissing "fraud or injustice" component of complaint seeking to pierce the veil between PDVH and PDVSA); *id.*, No. 24-cv-04448, Dkt. 130 at 2 (denying leave to amend). If the allegations of fraud or injustice there could not survive dismissal even after full discovery, Gramercy's allegations certainly cannot.

---

[1] *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (requiring plaintiff to prove (1) "exclusive domination and control" of a corporation by a shareholder and (2) that "the corporate structure cause[d] fraud or similar injustice" to pierce the corporate veil).

*Second*, the SAC does not allege any facts plausibly suggesting "exclusive domination and control" over PDVH beyond what is typical under Delaware law. Most of Gramercy's allegations of control are either conclusory or irrelevant. For example, Gramercy alleges overlapping personnel and dividend payments from the subsidiary to the parent, but these are legal commonplaces. Gramercy also invokes Venezuelan officials' alleged political statements and purported authority to act with respect to PDVH (*e.g.*, appoint directors), but fails to allege a single fact showing that these officials *did* anything, let alone so dominated the day-to-day operations and management of PDVH that the subsidiary functioned as a mere facade for PDVSA.

*Third*, Gramercy does not and cannot allege facts plausibly suggesting that reverse-piercing here would be equitable or serve the public interest.[2] On the contrary, the facts alleged show that Gramercy's requested relief would be *in*equitable and would *contravene* the public interest. Gramercy, a sophisticated investor, acquired the judgments years after other creditors began asserting what are now over $21 billion in judgments against PDVSA and the Republic, and after the Delaware court established the priority position in which the judgments were to share in proceeds from the sale of the PDVH stock. In other words, Gramercy *Distressed* Opportunity Fund, a Wall Street speculator, gambled on judgments involving a *distressed* foreign sovereign debtor with eyes open as to the nature of the judgments, the debtor, the potential claims against PDVSA, the corporate relationship between PDVSA and PDVH, and the near certainty that it could not collect from the PDVH share sale unless the Delaware Court altered its priority. Having lost that gamble, Gramercy cannot plead for the assistance of equity.

Finally, the SAC incorrectly alleges that federal common law under *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), applies because

---

[2] *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021) (imposing additional equitable considerations for reverse veil-piercing).

PDVH's shares are owned by a foreign sovereign instrumentality. ¶ 211.[3] But Federal Rule of Civil Procedure 69 directs the application of the forum's state law to judgment enforcement proceedings such as this one, and Texas courts evaluate a veil-piercing claim under the law of the jurisdiction where the corporation is incorporated (here, Delaware). Even if Rule 69 did not apply, *Bancec* governs the attribution of liability between a foreign sovereign and its foreign instrumentality, not attempts to pierce the veil of a domestic U.S. corporation like PDVH. The Supreme Court has never authorized the creation of federal common law to displace established state corporate law merely because a domestic corporation has a foreign sovereign shareholder, and doing so is not justified under established precedent. In any event, the SAC fails to state a veil-piercing claim under *Bancec* for the reasons above: the allegations do not amount to fraud or comparable injustice and do not come close to demonstrating PDVSA's extensive "day-to-day" control of PDVH, both of which are required under Fifth Circuit precedent.

The SAC should therefore be dismissed with prejudice.

### Nature and Stage of Proceedings

In 2020 and 2021, the U.S. District Court for the District of Columbia entered judgments against the Republic in favor of Tenaris S.A. and its subsidiary Talta-Trading e Marketing Socie-dade Unipessoal Lda. (collectively, "Tenaris"), arising from arbitration proceedings brought by Tenaris following the expropriation by the Republic of certain private investments. *See* ¶¶ 1, 22–27, 30–31. To collect on the judgments, Tenaris began participating in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151 (D. Del.) ("*Crystallex*"). *See* ¶¶ 33–53. In *Crystallex*, creditors of the Republic[4] and PDVSA —the Venezuelan national oil company—have

---

[3] The SAC (the operative complaint) is cited as "¶ __."

[4] Creditors of the Republic have been permitted to attach PDVSA's assets based on a limited finding of alter ego between Venezuela and PDVSA. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd* 932 F.3d 126 (3d Cir. 2019).

been pursuing post-judgment enforcement proceedings since 2017 seeking to execute on PDVSA's stock in PDVH.[5] *See* ¶ 33. PDVH is a Delaware corporation formed in 1997[6] and wholly owned by PDVSA. *See* ¶ 12. No court has ever held PDVH to be the alter ego of PDVSA. PDVH is the sole owner of CITGO Holding, Inc., which is the sole owner of CITGO, a major U.S. oil refiner and the creditors' real target. The *Crystallex* court has appointed a special master to oversee a public auction of the shares. ¶ 48. Fifteen creditors with over $21 billion in total judgments are currently participating in the Delaware proceedings.[7] ¶ 49. In July 2023, the Delaware court issued a priority order for the sale proceeds on a first-come, first-served basis premised on creditors' diligence.[8] The court held that Tenaris' place in the priority order was 16 out of 18 creditors, behind roughly $20 billion in other judgments.[9] ¶ 49.

On September 7, 2023, Gramercy purchased the judgments from Tenaris. ¶ 32. Unhappy with its position in the priority order, Gramercy unsuccessfully moved for reconsideration in January 2024 seeking *pro rata* treatment for all creditors who filed attachment motions.[10]

On July 29, 2024, Gramercy initiated this action in the District Court of Harris County to enforce its judgments under Texas Civil Practice and Remedies Code § 35.008 by obtaining a declaration that PDVH is the alter ego of PDVSA pursuant to § 37.004. *See* Dkt. 1-2 (original petition in state court). In its petition, Gramercy alleged that it is entitled to "a money judgment against PDVH in the amount of the judgments" because PDVH is allegedly the alter ego of PDVSA which,

---

[5] On a motion to dismiss, the Court may take judicial notice of "document[s] filed in another court to establish the fact of such litigation and related filings." *Johnston v. Dexel*, 373 F. Supp. 3d 764, 784–85 (S.D. Tex. 2019) (Rosenthal, C.J.).

[6] Exhibit A (PDVH Certificate of Incorporation). *In re Xtreme Power Inc.*, 563 B.R. 614, 631 (Bankr. W.D. Tex. 2016) (taking judicial notice, on motion to dismiss, of certificate of incorporation filed with the Delaware Secretary of State) (citing Fifth Circuit jurisprudence).

[7] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024).

[8] *Crystallex*, Dkt. 646, at 23–25 (D. Del. July 27, 2023).

[9] *See, e.g.*, *Crystallex*, Dkt. 996, at 2–3 (D. Del. Mar. 1, 2024).

[10] *Crystallex*, Dkt. 893, at 5 (D. Del. Jan. 26, 2024); *Crystallex*, Dkt. 963, at 6–7 (D. Del. Feb. 15, 2024).

in turn, is allegedly the alter ego of Venezuela. *Id.* ¶¶ 101, 106.

On August 9, 2024, PDVH removed this case to the Court, Dkt. 1, and on August 30, moved to dismiss for failure to state a claim, Dkt. 15. On September 27, PDVSA moved to intervene in this case. Dkt. 33. Gramercy filed a notice of non-opposition to the intervention motion, Dkt. 40, and this Court later granted PDVSA's motion to intervene. Dkt. 45. Before the parties completed briefing on PDVH's motion to dismiss, Gramercy filed its First Amended Complaint ("FAC") on October 16, 2024, with leave from this Court. Dkts. 44, 47. Gramercy asked the Court to defer ruling on the Motions to Dismiss, given the expedited schedule and extensive discovery in the New York Action being litigated by Gramercy's corporate affiliates. Dkt. 67. On April 15, with the benefit of discovery in the New York Actions, Gramercy filed its SAC. Dkt. 69.

In the New York Actions, two entities controlled by Gramercy filed complaints against PDVH making effectively the same alter ego allegations Gramercy makes here.[11] *See generally G&A*, 2025 WL 588208. At the pleading stage, the New York Court concluded "that plaintiffs have not sufficiently alleged alter ego liability under the fraud or injustice prong" of the federal alter-ego standard. *Id.* at *7.[12] It reasoned that the allegations about PDVH operating as a "sham entity" or PDVSA "siphoning funds from PDVH" were insufficient. *G&A*, 2025 WL 588208, at *7. After extensive discovery, plaintiffs submitted a request to present purported new evidence of fraud and injustice at summary judgment or, alternatively, to amend their pleadings. *Girard Street*, No. 24-cv-04448, Dkt. 123 at 1, 7. The court denied the request, holding that even with new purported

---

[11] *See Girard Street*, No. 24-cv-04448, Dkt. 47 (231 paragraphs); *G&A*, No. 23-cv-10766, Dkt. 89 (250 paragraphs).

[12] The New York Court denied the motion to dismiss because it determined that federal common law governed, and in the Second Circuit, alter ego under *Bancec* can be established by proving extensive control *or* "fraud or injustice." In contrast, Delaware law and the Fifth Circuit's interpretation of federal common law require *both* elements. *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 753 (5th Cir. 2012), *as revised* (Jan. 17, 2013).

evidence—obtained through more than 500,000 pages of documents, 200 requests for admissions, 175 document requests, 20 depositions, 10 interrogatories, 5 expert reports, and more[13]—it would be "futile" to attempt to allege fraud or injustice. *Girard Street*, No. 24-cv-04448, Dkt. 130 at 2. And on May 20, 2025, the New York Court granted summary judgment in favor of PDVH, dismissing the alter-ego claims brought by Gramercy's affiliates against PDVH outright, with a written opinion to follow "in due course."[14] *Girard Street*, No. 24-cv-04448, Dkt. 239. Gramercy's affiliates had argued on summary judgment that they had shown extensive control between PDVH and PDVSA and that it was equitable to pierce the veil.

## Legal Standard

To survive Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009), it need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678.

## Choice of Law

In its SAC, Gramercy contends that the federal common law test announced in *Bancec* applies to its effort to pierce PDVH's corporate veil. ¶ 211 (citing decision from New York Actions). Last September, however, Gramercy conceded that the "appropriate standard for

---

[13] Gramercy has agreed to rely in this case on the discovery collected by its corporate affiliates in the New York Actions, who are represented by the same counsel. Dkt. 55 at 7–8.

[14] In the event this Motion is denied, PDVH reserves the right to raise claim and issue preclusion as affirmative defenses following the issuance of an opinion and the entry of final judgment in the New York Actions. *See, e.g.*, Fed. R. Civ. P. 8(c); *Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) ("Res judicata and collateral estoppel are affirmative defenses that must be pleaded."); *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (same).

determining the alter ego issue in this case arises from Delaware law." Pl's Opp'n to PDVH's Mot. to Dismiss, Dkt. 29 at 1. Gramercy has therefore forfeited the argument that *Bancec* applies.[15] Although the SAC would fail to allege a claim even under federal common law, Gramercy had it right the first time: Delaware law applies.

In Texas, piercing the corporate veil is solely a remedy available to support another cause of action. *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119–20 (Tex. App.—Austin 1987, writ denied); *accord Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 693 n.1 (Tex. 1990). Given that Gramercy seeks to enforce its judgments in Texas, its request to pierce PDVH's corporate veil is supplemental to an effort to enforce those judgments. Proceedings to enforce judgments in federal court, and supplemental proceedings thereto, are governed by Fed. R. Civ. P. 69(a). *E.g.*, *In re Aluotto*, No. 08–32970, 2009 WL 1231988, at *2 (Bankr. S.D. Tex. Apr. 29, 2009) (Rule 69 governs issues related to Uniform Enforcement of Foreign Judgments Act) (citing Fifth Circuit).

Rule 69 requires the Court to apply Texas law, including its choice-of-law rules, even where the action is against a foreign state. Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005) (under Rule 69, state law applies to "the underlying garnishment proceeding" against a foreign state).[16] Under Texas's choice of law rules, Gramercy's request to pierce PDVH's corporate veil is governed by Delaware law. *In re Bass*, Br. No. 09–11451–CAG, 2011 WL 722384, at *8 (Bankr. W.D. Tex. Feb.

---

[15] Its undeveloped footnote about the possibility that federal common law "could apply to the alter ego determination" cannot salvage forfeiture here. Dkt. 29 at 6 n.3; *see United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

[16] *See also Enex Int'l, Inc. v. Prime 3 Grp., LLC*, No. 3:17-CV-00163, 2020 WL 6731019, at *2 (S.D. Tex. Oct. 27, 2020) (Edison, M.J.), *R&R adopted,* 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020) (applying forum state's choice-of-law rules to determine which substantive law applies to the turnover proceedings).

11, 2011) ("Courts [in Texas] are required to apply the law of the state of incorporation to corporate veil issues.").

The SAC points to the court's holding in the New York Actions, which concluded that federal common law governed the plaintiffs' attempt to impose liability on PDVH on an alter ego theory because its shareholder is a foreign sovereign instrumentality. ¶ 211; *G&A*, 2025 WL 588208, at \*2–4. But the court there (erroneously) held that Rule 69 did not apply at all, because the plaintiffs were not seeking to enforce a judgment. *G&A*, 2025 WL 588208, at \*2**.** Here, there can be no doubt that Rule 69 applies, and *Bancec* cannot displace the command of Rule 69 to apply state law. Rule 69 "has the force of a federal statute," *Port Drum Co. v. Umphrey*, 852 F.2d 148, 149 (5th Cir. 1988), and federal common law can only apply in the absence of a statute, *see City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981).[17]

Even if Rule 69 did not govern the choice of law, state law would still apply because federal common law only applies in "special circumstances" that are absent here. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 253 n.23 (5th Cir. 2005). Before a court can apply federal common law to displace state law, it must determine that there is a significant federal interest that federal common law is "*necessary* to protect." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 116 (2022). This requires identification of a "*significant* conflict," that is, "a specific, concrete federal policy or interest that is compromised by" applying state law. *O'Melveny & Myers v.*

---

[17] In dicta, the New York Court opined that even if the case were governed by Rule 69, it could still apply federal common law because Rule 69 requires only the application of state procedures in judgment enforcement proceedings, not state substantive law. *G&A*, 2025 WL 588208, at \*4**.** Such a holding cannot be squared with Fifth Circuit precedent. *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 595–96 (5th Cir. 2006) (holding that garnishment actions under Rule 69 "are governed by state law" and requiring determination that property was garnishable as a matter of *Texas* law); *Walker*, 415 F.3d at 416 (explaining that state law supplies "the rule of decision" governing a garnishment proceeding against foreign state property).

*F.D.I.C.*, 512 U.S. 79, 87–88 (1994) (emphasis added).

Plaintiff can identify no such conflict here. The Supreme Court recently made clear that uniform federal rules are not required merely because a suit involves a foreign sovereign. *Cassirer*, 596 U.S. at 116–17. And, as the Fourth Circuit has recognized, "[i]t is not immediately apparent" that *Bancec* should extend to an attempt to pierce the veil of a domestic U.S. corporation whose shares are owned by a foreign state instrumentality. *See Flatow v. Alavi Found.*, 225 F.3d 653, 2000 WL 1012956, at *5 n.6 (4th Cir. 2000).[18]

In *Bancec*, the Supreme Court identified risks favoring the application of federal common law: (1) that the foreign sovereign would manipulate its own law and thus "effectively insulat[e] itself from liability in foreign courts," 462 U.S. at 622, and (2) that applying "conflicts principles" of the forum state would leave questions of whether a foreign state and its instrumentalities are separate "to divergent and perhaps parochial state interpretations." *Id.* at 622 n.11 (cleaned up). Neither concern is relevant here. First, whereas foreign state instrumentalities are necessarily creations of the foreign sovereign that owns them, *see* 28 U.S.C. § 1603(b); *Bancec*, 462 U.S. at 624, domestic "[c]orporations are generally creatures of state law," *Rodriguez v. Fed. Deposit Ins. Corp.*, 589 U.S. 132, 137 (2020). Thus, there is no risk that a foreign sovereign could insulate the domestic U.S. corporations whose shares it holds from liability. Second, while *Bancec* was concerned about the direct effect on foreign relations of a state refusing to recognize the separateness of a foreign state instrumentality, 462 U.S. at 622 n.11, PDVH is a Delaware corporation, not a foreign state instrumentality, *see* 28 U.S.C. § 1603(b)(3). Every state has well-developed corporate law recognizing—and a strong interest in protecting—the separate existence of its corporations

---

[18] The Supreme Court has never held that federal common law applies to pierce the veil of a domestic corporation merely because its shareholder is a foreign sovereign instrumentality. Indeed, *Bancec*'s references to a foreign sovereign "instrumentality" excluded American corporations by definition. 28 U.S.C. § 1603(b) (3).

and governing when to disregard that separateness, on which parties—including foreign sovereign shareholders—have relied in structuring their affairs. *Energy Coal, S.p.A. v. CITGO Petroleum Corp.*, No. 2:14-CV-03092, 2015 WL 5123867, at *3 (W.D. La. Aug. 31, 2015), *aff'd*, 836 F.3d 457, 463 (5th Cir. 2016) (holding that Delaware law applied to attempt to hold CITGO liable as the alter ego of Petróleo, a Venezuelan state entity, and noting Delaware's "compelling policy interest" in ensuring the separate existence of corporations organized under its protection). Concerns about uniformity therefore relate not to a unique *federal* "foreign relations concern," *Cassirer*, 596 U.S. at 117, but rather to a mere general desire for uniformity, which is insufficient. *See Marsh v. Rosenbloom*, 499 F.3d 165, 182 (2d Cir. 2007). And the Supreme Court "expressly has cautioned against displacement of state law in areas traditionally occupied by the states." *Id.* at 177. *Bancec* did not pose such a concern, since the relevant corporate entity there was a foreign corporation, so the state choice-of-law rule would have pointed to the application of foreign or international law. Accordingly, state rather than federal common law should apply.

**Argument**

## I.     Gramercy Has Failed to Allege Alter Ego Under Delaware Law.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). It requires a plaintiff to prove two elements: (1) "exclusive domination and control" of a corporation by a shareholder and (2) that "the corporate structure cause[d] fraud or similar injustice." *Id.* at 1184. In addition, a plaintiff in a reverse-piercing case must prove a third element: that taking the extraordinary step of holding a corporation liable for the debts of its shareholder would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del.

Ch. 2021). Even after supplementing its allegations with discovery produced in the New York Actions to attempt to respond to the deficiencies noted by PDVH, *see* Dkts. 15, 57, Gramercy has failed to adequately plead these three requirements.

### A. Gramercy Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil.

The SAC fails at the threshold because—as the New York Court concluded regarding similar complaints, *see supra* pp. 6–7—Gramercy has not alleged facts plausibly showing misuse of the corporate form to commit "fraud or similar injustice." The Delaware Supreme Court has held that "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."). Attempts to enforce a judgment through reverse-piercing are no exception: "A creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). Establishing fraud or similar injustice is a high bar. *Wallace*, 752 A.2d at 1184.

After three attempts, Gramercy *still* does not allege facts plausibly suggesting that either Venezuela or PDVSA created PDVH as a sham entity or that PDVH—the longstanding parent of one of the country's largest refiners—"exist[s] for no other purpose than as a vehicle for fraud," *id*.

Gramercy states that "PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its

12

obligations." ¶ 284(h). But this is only a conclusion, not a well-pleaded factual allegation. *See, e.g.*, *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 839–42 (S.D. Tex. 2017) ("[C]onclusory statement[s] that [the] entities are one" or that they committed "fraud or similar injustice" are "not sufficient" to satisfy Rule 12(b)(6)).

Nor does Gramercy allege facts plausibly supporting this conclusion. For example, Gramercy alleges that PDVSA benefits from the operations of a corporate subsidiary while relying on the corporate veil to segregate each entity's assets and liabilities, but that is simply restating the fundamental principle of corporate separateness that, far from being a fraud, underpins the modern corporation. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[A] parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotation marks omitted).

The SAC also offers the internally inconsistent theory that PDVH helped PDVSA (or Venezuela) avoid obligations to creditors *both* by paying dividends to PDVSA and by *not* paying them, but this theory too fails to show fraud. *See* ¶¶ 264, 284(g). Under Delaware law, it is not a fraud in the use of the corporate form for a non-debtor to pay money to a debtor. *See Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *6 (Del. Ch. Sept. 5, 2023) (dismissing veil-piercing claim alleging parent debtor engaged in sham sale of an asset from one subsidiary to another subsidiary to avoid creditors because, even if the transaction could be construed as a fraudulent transfer, the "fraud or injustice" did not "come from an inequitable use of the corporate form itself as a sham."). Indeed, the Third Circuit has already held that the dividend that Gramercy complains about here did *not* constitute a fraudulent transfer under Delaware law because transfers by a non-debtor (here, PDVH) to a debtor (here, PDVSA and Venezuela) cannot be fraudulent as to the debtor's creditors (here, Gramercy). *Crystallex Int'l*

13

*Corp. v. Petróleos de Venezuela, S.A.,* 879 F.3d 79, 86 (3d Cir. 2018).[19]

Furthermore, while the SAC hypothesizes that the dividends paid by PDVH to PDVSA in 2015 were intended "to serve Venezuela's political objectives" instead of being "available to satisfy commercial obligations of PDVH and PDVSA," ¶ 230, *Twombly* and *Iqbal* make clear that, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Here, the SAC itself alleges facts indicating the real, non-fraudulent reason PDVH declared the dividends: PDVSA needed the funds to satisfy creditors. *See, e.g.*, ¶ 75 (alleging that from 2014 to 2016, oil prices collapsed, PDVSA's revenues "plummeted" and "PDVSA struggled to pay suppliers and joint venture partners"). If anything, therefore, the dividends *enhanced* PDVSA's and Venezuela's ability to repay debts.[20]

The other two pieces of the alleged scheme are similarly belied by the SAC's own allegations. First, while Gramercy complains that PDVH's pledge of certain assets reduced PDVH's value, Gramercy is not a creditor of PDVH and thus does not have and has never had any right to attach PDVH's assets. Moreover, the SAC makes clear that the pledges were used to help PDVSA finance obligations owed to *other creditors*. *See* ¶¶ 122, 125; *see also id.* ¶ 78 (alleging that Venezuela's low credit rating in 2016 "made it nearly impossible for the Venezuelan government or PDVSA to engage in unsecured financing"). Second, Gramercy complains that PDVH should be paying dividends to PDVSA to allow PDVSA and Venezuela to pay their creditors, but there is no

---

[19] The Third Circuit left open the possibility that a transfer by a non-debtor could be considered fraudulent if the non-debtor were the alter ego of the debtor. *Crystallex*, 879 F.3d at 86. But if PDVH's dividends could themselves have established alter ego, then the Third Circuit would not have ordered dismissal of the fraudulent transfer claim.

[20] In any event, PDVH's board had no duty to act "in the best interest of . . . creditors" of Venezuela, its shareholder's shareholder. ¶ 189(b). *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 176, 184–185 (Del. Ch. 2014) (explaining that a subsidiary's duties run to its parent company alone, and in the event of insolvency, run to *its own* creditors).

obligation for a subsidiary to pay dividends for that purpose. More importantly, as Gramercy acknowledges, PDVH has been blocked from issuing dividends since 2017 as a result of United States sanctions. ¶ 129.[21] Accordingly, PDVH's inability to pay dividends is not and cannot be evidence of an alleged alter ego relationship.

In the end, Gramercy merely repeats the allegations that were already rejected in the New York Actions. *E.g.*, *Compare* ¶ 242, *with G&A*, No. 23-cv-10766, Dkt. 89 ¶ 193 (identical, conclusory allegations). And anything *new* it has offered has also been rejected by the New York Court. Indeed, the New York Court not only concluded that the Gramercy affiliates' allegations were insufficient, *see G&A*, 2025 WL 588208, at *7, but also rejected as "futile" the Gramercy affiliates' attempt to shore up their fraud or injustice theory with additional allegations based on the substantial discovery in those cases, which are again the same allegations Gramercy has added to its third attempt to state a claim here. *Girard Street*, No. 24-cv-04448, Dkt. 130 at 2.

Having failed to meet the "fraud or similar injustice" prong of the alter ego test, nothing further is needed to hold that the claim fails under Delaware law. *See, e.g.*, *In re Enron*, 238 F. Supp. 3d at 839–42 (dismissing alter ego claim under Delaware law because the plaintiffs failed to allege any facts supporting fraud or similar injustice) (citing cases).

### B. Gramercy Has Not Alleged "Exclusive Domination and Control."

Even if the SAC had sufficiently alleged fraud or similar injustice, Gramercy's allegations of "domination and control" by PDVSA[22] over PDVH are conclusory and insufficient. Delaware

---

[21] If that weren't sufficient, the *Crystallex* court also attached the shares of PDVH in 2018, prohibiting PDVH from paying any dividends until that attachment is released and debts are paid. *See Crystallex*, Dkt. 1277 at 2–3.

[22] The SAC relies on *OI Eur. Grp. B.V. v. Bolivarian Rep. of Venezuela*, 73 F.4th 157, 172 (3d Cir. 2023), to suggest that PDVSA and Venezuela are alter egos and thus that the conduct of the Republic or its officials can be imputed to PDVSA. ¶ 133. For purposes of this motion to dismiss, PDVH is not challenging whether the SAC adequately alleges that PDVSA and Venezuela are alter egos, but PDVH neither agrees with

courts consider the following non-dispositive factors when assessing "domination and control": "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Sprint Nextel Corp. v. iPCS, Inc.*, Civ. A. No. 3746–VCP, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008); *Manichaean Cap.*, 251 A.3d at 706–07 (considering same factors in reverse veil-piercing context). The SAC recites most of these factors, *e.g.*, ¶¶ 255, 259, 273(d), (f), but it fails to allege facts supporting a finding of control here.

*Undercapitalization*—Gramercy alleges no facts to support its repeated conclusory assertions that PDVH was undercapitalized. To the extent PDVH's capitalization is even relevant in a reverse veil-piercing case (see the discussion of fund-siphoning below), Gramercy does not allege any facts plausibly suggesting that PDVH "was [not] adequately capitalized for the undertaking" of being a holding company for a refiner and marketer of petroleum products, either upon formation in 1997 or at any other time. The SAC's conclusory allegation that PDVH was undercapitalized because it paid excessive dividends to PDVSA and thus lacked funds to pay any more dividends, *see* ¶ 255, is not only logically impenetrable but also fails to establish that PDVH was undercapitalized either at its formation or for its own undertakings. *See* 1 Fletcher Cyc. Corp. § 41.33 ("'Inadequate capitalization' . . . generally means capitalization very small in relation to the nature of the business of the corporation and the risks attendant to such businesses. Adequacy of capitalization must be measured at the time of incorporation because it reveals whether the corporation was created to avoid liability." (footnote omitted)).

*Solvency*—Gramercy also fails to allege PDVH was insolvent, which would require

---

Gramercy's characterization of the decision nor concedes that it is collaterally estopped from contesting the PDVSA-Republic alter ego issue on the merits.

showing "a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued" or "an inability to meet maturing obligations." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 384 (3d Cir. 2007) (quoting *Prod. Res. Grp., LLC v. NCT Grp., Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004)). There are no facts alleged supporting the notion that PDVH is or has ever been insolvent, and even if there were, such contentions would be implausible given that PDVH continues as a going concern more than nine years after the challenged dividend and is currently the subject of a multi-billion-dollar bid in a judicial sale to satisfy debts owed to other creditors of Venezuela or PDVSA. *In re Tropicana Ent., LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (recitation of "conclusory statements" insufficient to plead insolvency).

*Corporate Formalities*— The SAC's conclusory buzzwords about corporate formalities are bereft of supporting factual allegations. *See* ¶ 284(d) (alleging "PDVH failed to observe corporate formalities at various times throughout the relevant period"). Gramercy alleges "PDVH and its subsidiaries [needed] to obtain PDVSA's president's sign-off before validly entering into any contracts subject to PDVSA's control," ¶ 224, but reviewing a subsidiary's contracts would not be a failure to observe "corporate formalities." *See, e.g.*, *Adm'rs of Tulane Educ. Fund v. Ispen, S.A.*, 450 F. App'x 326, 331–33 (5th Cir. 2011) (per curiam) (declining to find alter ego where parent oversaw operations, research, and budget of wholly owned subsidiary); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–60 (2d Cir. 1995) ("[T]he district court correctly concluded that it could find no domination based on" the fact that the parent's approval was required for the subsidiary's transactions—"conduct [that] is typical of a majority shareholder or parent corporation.") (collecting cases).[23] Even if it could be, Gramercy does not even allege facts showing PDVSA *actually*

---

[23] Examples of not following corporate formalities include: "failure to file an annual report or tax return leading to the state's dissolution of the corporation, failure to pay dividends, [the] use of funds secured from the plaintiff to satisfy the officer's personal obligations . . . failing to hold stockholders' or directors'

17

reviewed any contracts. The SAC merely alleges that PDVSA's president had *authority* to review PDVH contracts and that a Venezuelan official had the *authority* to modify PDVH's management and administration, ¶ 224, but Gramercy cites no example that either power was ever exercised.

*Siphoning of Funds*—Gramercy repeatedly characterizes PDVH's payment of dividends to its shareholder in 2015 as "siphoning of funds." *See, e.g.*, ¶ 7. That is nonsense. "Siphoning suggests 'the improper taking of funds that the owner was not legally entitled to receive.'" *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 557 (Bankr. D. Del. 2012) (quoting *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 517 n.69 (Bankr. N.D. Tex. 2009)). The term does not apply to the issuance of properly declared dividends, to which a shareholder is legally entitled. *See The Heritage Org.*, 413 B.R. at 517 n.69 (explaining that "siphoning funds is different than making distributions to members that are permitted by law").[24]

Gramercy suggests it was somehow improper for PDVH to issue dividends when its parent was in financial distress. But directors of a wholly owned subsidiary (like PDVH) are obligated by their fiduciary duties to operate the company for the benefit of their shareholder (like PDVSA) and, indeed, are authorized by law to follow a sole shareholder's instructions. *See, e.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and

---

meetings; directing receipts to the controlling stockholder's bank account and using a single endorsement stamp for all affiliated companies; the parent company's board of directors establishing salaries, appointing auditors, and declaring dividends of its subsidiary; and the parent company's providing interest-free loans to its subsidiary without documenting those loans with promissory notes." 1 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 7:9 (4th ed. 2024 update); *see also Manichaean Cap.*, 251 A.3d at 716 (identifying examples as overlapping personnel and directors, sharing the same offices, the lack of updated corporate registrations, the failure to maintain accurate or complete corporate records, requiring approval to pay debts, and referring to the enterprise as a single entity in official filings). Seeking approval from a parent before entering into certain contracts is not such an example.

[24] More broadly, while it makes sense in a traditional veil-piercing case to consider whether the parent "siphoned" funds from its subsidiary, that conduct has no relevance to reverse-piercing, where it helps rather than hurts the parent's creditor to enhance the parent's financial standing. *See Pac. Dev., Inc. v. United States*, No. 77-0690, 1979 WL 1283, at *2 (D.D.C. Jan. 3, 1979), *aff'd sub nom., Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980).

wholly owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201–03 (Del. Ch. 2006), *aff'd sub nom.*, *Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (explaining that directors of a subsidiary are "entitled to follow the parent's instructions unless those instructions require[] the board to violate the legal rights of others," and have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another").

Gramercy alleges that the 2016 Pledge was improper, but Delaware law likewise dispenses with this claim because it allows a parent to direct its subsidiary to execute a pledge for the parent's benefit even if the subsidiary receives no benefit in return. *See Trenwick*, 906 A.2d at 192 (explaining that there is nothing improper under Delaware law about a parent causing a wholly owned subsidiary to pledge a "key asset," including where such transaction ultimately provides "no prospect of benefit" for the subsidiary and renders the subsidiary "less valuable").

*General Facade*—Gramercy alleges sporadic instances of overlap among the members of the boards of PDVSA and PDVH, or that PDVH board members also were employees of PDVSA. ¶¶ 171–88. It is well-settled Delaware law, however, that the overlap of personnel and directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, No. CV 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (explaining that the presumption of corporate separateness applies "even where one corporation wholly owns another and even though the entities have identical officers and directors." (internal quotation marks omitted)). Similarly, the suggestion that PDVSA dominated PDVH by making board appointments, ¶¶ 171, 186, is directly contrary to Delaware law: sole shareholders not only

have the power to appoint directors but are also the only ones authorized to do so. Del. Code Ann. tit. 8, § 211(b) (2009) (providing that directors are elected by shareholder(s) of company); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm."). Gramercy does not allege any example suggesting that PDVH's directors were absentees who did not perform the ordinary duties of a corporate director.[25] And Gramercy distorts a letter from the Committee for the Administration and Protection of the Assets, which wrote to the U.S. Secretary of State to also help advance PDVH's *own interests*. ¶ 204.[26]

Gramercy's remaining allegations of control are, once again, conclusory. *E.g.*, ¶ 254 ("At all relevant times, PDVSA and PDVH operated as one entity."); ¶ 263 ("PDVSA has exercised significant and extensive dominion and control over PDVH."); *see also* ¶¶ 58, 263, 273(c) (same). This will not suffice. Delaware courts are clear that piercing the veil should be rare. *E.g.*, *Wallace*, 752 A.2d at 1183–84. Gramercy's conclusory march through the "extensive control" prong of the alter ego test demonstrates nothing out of the ordinary for wholly owned Delaware subsidiaries.

## C. Gramercy Has Not Adequately Alleged that Reverse Piercing Is Equitable.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy. Eight

---

[25] Gramercy alleges that the replacement of six CITGO board members demonstrates disregard of corporate formalities. ¶¶ 146–57. These conclusory allegations fail to identify what formalities were disregarded and, in any event, do not involve either PDVSA or PDVH.

[26] *See PDVSA, et al. v. MUFG Union Bank, N.A., et al*, No. 19-cv-10023, Dkt. 274-7 (S.D.N.Y.). Gramercy's vague reference to PDVH registering under the Foreign Agents Registration Act of 1938 ("FARA"), ¶ 187, could not support a facade argument, either. Gramercy's allegation acknowledges that the filing was made pursuant to the DOJ's interpretation of FARA—not PDVH's own. *Id.* And registration as an "agent" under FARA is not coextensive with alter ego. *See, e.g., Att'y Gen. of U.S. v. Irish N. Aid Comm*, 668 F.2d 159, 161 (2d Cir. 1982) ("In determining agency for purposes of the [FARA] . . . our concern is not whether the agent can impose liability on [the] principal but whether the relationship warrants registration by the agent to carry out the informative purposes of the Act."); *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 176 (5th Cir. 1989) (noting that majority ownership may establish "agency" status under FSIA but is not enough to establish alter ego).

factors inform this inquiry.[27] *Manichaean Cap.*, 251 A.3d at 715. The SAC does not adequately allege any of the relevant factors and instead reveals that reverse-piercing here would be inequitable, which is another reason to dismiss Gramercy's claims.

*First*, Gramercy cannot establish "reasonable reliance upon a lack of separate entity status" between PDVSA and PDVH when it bought the judgments or at any other relevant time (Factor 3). ¶ 31. Gramercy knew that the judgments it was purchasing in 2023 were against the Republic, not PDVH. *See* ¶ 30–32. It is not inequitable to hold Gramercy, a speculator in distressed debt, to the terms of the judgments that name only Venezuela as the debtor when, at the time it purchased the judgments, Gramercy knew all the facts that it now alleges as a basis to pierce the veil. Even if, contrary to common sense, Gramercy's knowledge were judged as of the time that Tenaris obtained the judgments in 2016, most of the facts Gramercy alleges to support its alter ego claim predate even that time.[28] *See generally Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*, 934 F. Supp. 570, 576 (S.D.N.Y. 1996) ("[T]he knowledge of an assignor must be attributed to its assignee.").

That executing against the Republic may be difficult does not demonstrate Gramercy relied on the lack of separateness between PDVSA and PDVH when it bought the notes. On the contrary, speculators like Gramercy acquire distressed debt at a substantial discount to face value precisely because collection is difficult. Moreover, in *Crystallex*, Gramercy is relying on PDVH's separate

---

[27] These are: (1) the potential impairment of "the legitimate expectations of any adversely affected [non-responsible] shareholders" and the potential for "a precedent troubling to shareholders generally"; (2) the degree of the subsidiary's exercise of "dominion and control" over the parent; (3) the degree to which the injury "is related to [that] dominion and control" or the plaintiff's "reasonable reliance upon a lack of separate entity status"; (4) the degree to which reverse piercing would serve "the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law"; (5) "the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider"; (6) "the possibility that the [plaintiff] is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief"; (7) the potential harm to the subsidiary's "innocent third-party creditors"; and (8) "the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt." *Manichaean Cap.*, 251 A.3d at 715 (cleaned up).

[28] *See, e.g.*, ¶¶ 61, 78, 95–99, 133, 135, 171–188, 273(g).

corporate identity by attaching PDVH stock and obtaining proceeds from the sale of that stock to a third-party purchaser. In other words, in Delaware, Gramercy seeks to benefit from PDVH's separate existence, while here it alleges that PDVH has no separate existence.

*Second*, Gramercy does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). On the contrary, it alleges that *PDVSA* engaged in "wrongful conduct," *see* ¶¶ 266, 284(m), and the allegations show that PDVH acted consistently with its fiduciary obligations to act in the best interests of its parent. Gramercy does not allege—nor could it—that PDVH's nonexistent control over PDVSA caused Gramercy's injury (*i.e.*, Venezuela's expropriation of Tenaris S.A.'s property or failure to pay on the judgments) (Factor 3). Indeed, Gramercy alleges that *PDVSA* caused PDVH to make dividends to PDVSA and that some of these funds were in turn paid by PDVSA to the Republic. *See* ¶¶ 255–56. If anything, this only would have enhanced Venezuela's ability to pay its debts.

*Third*, piercing PDVH's veil threatens PDVH's third-party creditors and any new shareholders (Factors 1, 6, 7), as the *Crystallex* special master has informed this Court. *See Crystallex*, Dkt. 1302-2 at 18 (Gramercy is "seeking to circumvent the [*Crystallex*] process and jump the line ahead of the other creditors who participated in the sale process"); *see also Manichaean Cap.*, 251 A.3d at 716 (assessing potential harm to innocent third parties). Gramercy alleges that piercing would "not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim." ¶ 261. This ignores that if the PDVH shares are sold in the *Crystallex* process, then execution against PDVH's assets will have interfered with the "legitimate expectations" of PDVH's potential and foreseeable new shareholders. *Manichaean Cap.*, 251 A.3d at 715. It also ignores Gramercy's wrongful conduct in seeking proceeds from the sale of the PDVH stock to an innocent buyer. The sale is premised on the idea that PDVH is a

separate entity while this suit seeks to dilute—if not completely obliterate—the value of that stock by claiming that PDVH is a sham.

*Fourth*, Gramercy is wrong that piercing PDVH's veil "would not establish a precedent troubling to shareholders," ¶ 261, or disserve the "public convenience," ¶ 265, (Factors 1 & 4). As explained, Gramercy seeks to pierce PDVH's veil based on conduct that under Delaware jurisprudence does *not* warrant disregard of the corporate form. A decision in Gramercy's favor would thus contravene Delaware public policy and dilute its stringent protection of corporate separateness. Moreover, Gramercy's requested relief is currently prohibited under U.S. sanctions law (Factor 4) absent a license from OFAC, which it has not alleged to have sought or obtained. 31 C.F.R. § 591.407; 31 C.F.R. § 591.310; ¶¶ 31–32 (license for purchasing judgments but not attachment).

*Finally*, Gramercy had *and already pursued* another remedy available to it (Factor 8): pursuing its claims against the Republic and attaching the shares of PDVH in *Crystallex*. *See supra* pp. 4–5 (noting Gramercy's participation in *Crystallex*). Where "traditional judgment collection measures" provide a practically available remedy, "reverse piercing . . . would be unnecessarily extreme and inappropriate." *Manichaean Cap.*, 251 A.3d at 718.

## II.    Even If *Bancec* Applied, Gramercy Fails to State a Claim.

Despite Gramercy's previous concession that Delaware law applies, the SAC now argues that veil-piercing should be adjudicated under *Bancec*. ¶¶ 211–51. Gramercy is incorrect (*see* Choice of Law section), though its error does not change the outcome. The SAC, citing a decision by the New York Court applying Second Circuit *Bancec* jurisprudence, argues that the test is disjunctive, requiring one prong or the other. ¶ 211. But in the Fifth Circuit, the test is *conjunctive*—just like under Delaware law. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (veil-piercing under *Bancec* applies "only if '(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to

commit a fraud or wrong that injured the party seeking to pierce the veil'" (citation omitted)). Gramercy has failed to satisfy either prong.

For the reasons described above, Gramercy has not plausibly alleged fraud or injustice under *Bancec*. The New York Court held as much as to the Gramercy affiliates' complaints (twice), and the same reasoning applies here. *G&A*, 2025 WL 588208, at *7; *Girard Street*, No. 24-cv-04448, Dkt.130. "For [Gramercy] to meet this prong it is not sufficient for it merely to point out an injustice that would result from an adverse decision," *First Inv. Corp.*, 703 F.3d at 755, such as an inability to collect on its judgments, ¶¶ 250, 273(l). "Rather, [Gramercy] must show how [PDVSA] manipulated [PDVH's] corporate form to perpetuate a fraud or injustice." *First Inv. Corp.*, 703 F.3d at 755. It cannot do so, *see supra* I.A., which compels dismissal. *Bridas*, 447 F.3d at 416.

Moreover, Gramercy cannot establish that PDVSA maintained "extensive control" over PDVH. The touchstone inquiry of *Bancec*'s extensive control prong is whether the sovereign state exercises significant and repeated control over the instrumentality's "day-to-day operations." *First Inv. Corp.*, 703 F.3d at 753–54. Exercising "the rights of a shareholder," such as appointing "board of directors and senior [] personnel" or providing funding, are insufficient to establish control. *Id*. A parent can also "assist[]" its subsidiary without controlling it. *Id*. at 755; *accord Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021).[29]

None of Gramercy's *Bancec* allegations reflect "day-to-day" control. Many (like the sale of major assets) are premised on extraordinary rather than day-to-day occurrences. Some are premised on alleged conduct (like appointing or having overlapping directors) that evinces the ordinary "power incidental to ownership" that PDVSA enjoys as a sole shareholder under Delaware or

---

[29] Gramercy also fails to adequately allege other factors "normally explored in the context of parent-subsidiary alter ego claims." *See First Inv. Corp.*, 703 F.3d at 753 & n.7 (citation omitted). *See supra* I.B.

federal law. *See First Inv. Corp.*, 703 F.3d at 753–54 (shareholder may appoint directors). Other allegations (like the $2.2 billion dividend recapitalization transaction) involve conduct that is *both* extraordinary *and* incidental to ownership. *See, e.g., Trenwick*, 906 A.2d at 202 (dividends are appropriate because subsidiaries "are formed by parents to benefit the parents"). The same applies to the 2016 pledges, ¶ 122, which merely show PDVH, consistent with its fiduciary duties, assisting PDVSA in a severe and unprecedented fiscal emergency. *See EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 94 (2d Cir. 2015) (central bank was not Argentina's alter ego merely because it helped respond to "extremely severe debt crisis"); *Trenwick*, 906 A.2d at 192 (causing wholly owned subsidiary to pledge assets is not improper under Delaware law).[30]

Finally, *Bancec* is grounded in equitable principles, meaning that a court must be satisfied that piercing the veil is an appropriate exercise of its equitable power. 462 U.S. at 613 ("[a]pplying principles of equity common to international law and federal common law"). For the reasons detailed above in assessing the *Manichaean* factors, no court could conclude that Gramercy's conscious ploy to sidestep its position in the *Crystallex* case is equitable.

## Conclusion

For the reasons stated above, PDVH requests that the SAC be dismissed with prejudice.

---

[30] Similarly, the allegations of purported public, political statements by Venezuelan and PDVSA authorities, ¶ 273, reflect at most the parent exercising its "rights of a shareholder" of a wholly owned subsidiary, including by "assist[ing]" the subsidiary or standard oversight and involvement to be expected from a parent. *First Inv. Corp.*, 703 F.3d at 753, 755.

Dated: May 30, 2025

Respectfully submitted,

**EIMER STAHL LLP**

By: /s/ *Nathan P. Eimer*

Nathan P. Eimer
State Bar No. 24001478
S.D. Tex. No. 31213
neimer@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718

*Attorney-In-Charge for Defendant*
*PDV Holding, Inc.*

**Of Counsel:**
Scott C. Solberg (*pro hac vice*)
ssolberg@eimerstahl.com
Daniel D. Birk (*pro hac vice*)
dbirk@eimerstahl.com
James W. Joseph (*pro hac vice*)
jjoseph@eimerstahl.com
Gregory M. Schweizer (*pro hac vice*)
gschweizer@eimerstahl.com
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Facsimile: (312) 692-1718

David J. Beck
State Bar No. 00000070
Federal Bar No. 16605
dbeck@beckredden.com
Kaitie Sorenson
State Bar No. 24128633
Federal Bar No. 3859186
ksorenson@beckredden.com
**BECK REDDEN LLP**
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

## <u>CERTIFICATE OF SERVICE</u>

I certify that, pursuant to Federal Rule of Civil Procedure 5(b) and Local Rule 5.3, a true copy of **Defendant PDV Holding, Inc.'s Motion to Dismiss Second Amended Complaint** was filed on May 30, 2025 via the court's CM/ECF system, which will automatically serve a Notice of Electronic Filing to all registered users.

/s/ *Nathan P. Eimer*

Nathan P. Eimer
